

October 21, 2015

<u>VIA ELECTRONIC & OVERNIGHT MAIL</u>

Chris Madsen
Legal Director, U.S. Compliance & Security
Yahoo! Inc.
701 First Avenue
Sunnyvale, CA, 94089-0703
E-Mail: cmadsen@yahoo-inc.com

Re:    <u>Regina v. Russell Knaggs</u>
       Royal Courts of Justice, Criminal Division, No. 201201761 C1

Dear Mr. Madsen:

Our firm represents Russell Knaggs in his efforts to obtain discovery from Yahoo! in connection with the above-captioned proceeding. Mr. Knaggs' case is on appeal in the United Kingdom. In furtherance of this appeal he is seeking the depositions of the following Yahoo! representatives in order to inquire into the issues that Mr. Knaggs has raised to you and other Yahoo! representatives throughout the past two years:

- Sonja Durnin, Global Compliance Director;
- Randy Camp, Director Y! Messenger Software Engineering;
- Naryan Dash, Director Engineering; and
- David Sprigg, Back-End Mail Principal Engineer.

We are prepared to file a petition pursuant to 28 U.S.C. § 1782. See <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004) (federal courts have the power to issue subpoenas for depositions to persons residing in their federal districts for use in foreign tribunals). However, we are hoping that Yahoo! will agree to the depositions without the necessity of legal action since Yahoo has previously produced documents and declarations to the British prosecutors.

We would appreciate a quick reply to this request. If we do not hear from you by the close of business two weeks from today, on Wednesday, November 4, 2015, we will proceed to file a petition in the Northern District pursuant to 28 U.S.C. § 1782. The grounds for the application are straightforward and such requests are routinely granted. See, e.g., <u>London v. Does 1-4</u>, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming district court order requiring Yahoo! to provide §

Chris Madsen
Yahoo! Inc.
October 21, 2015
Page 2

1782 discovery in support of a UK divorce proceeding); In re ex parte Lee-Shim, No. 513MC80199LHKPSG, 2013 WL 5568713, at *2 (N.D. Cal. Oct. 9, 2013) (ordering Yahoo! to produce materials in support of U.K. proceedings); In re ex parte Application of Ontario Principals' Council, No. 513MC80237LHKPSG, 2013 WL 6073517, at *3 (N.D. Cal. Nov. 8, 2013) (approving requests relating to various email addresses, including user names and other identifying information, screen names, related websites, account status, and IP addresses).

Although you are likely familiar with the facts given your previous communications with Mr. Knaggs and his British legal team, let us recap the basics. Mr. Knaggs was convicted in 2012 of a conspiracy to import drugs into the United Kingdom. The conviction was based in part on evidence obtained from Yahoo! regarding a Yahoo! email account through which prosecutors alleged that co-conspirators of Mr. Knaggs communicated about the conspiracy, without ever sending email. Instead prosecutors charged that the users of the account used "draft" emails as message boards, taking turns deleting, editing, and rewriting the drafts, but never actually sending an email that would create a traditional sender-recipient trail.

In February 2012, Mr. Knaggs was convicted at trial based in part on the evidence that the prosecution obtained from Yahoo!. He received a 20-year sentence. Mr. Knaggs lodged grounds of appeal with the Royal Courts of Justice, London, in March 2012. Although Mr. Knaggs maintains his innocence—and insists that he was never involved in the alleged email plot that prosecutors describe—he also asserts that the evidence used against him was, among other things, inadmissible under British law because of the manner by which it was actually obtained. Mr. Knaggs has obtained leave of court to pursue these grounds of appeal, but he needs to conduct fact discovery to prove or disprove this defense.

Mr. Knaggs seeks to examine the Yahoo deponents on the following topics:

1. The contents of the "Statement of Michele Lai" sworn and executed by Ms. Lai on May 22, 2014 and the "Statement of Michele Lai" sworn and executed on July 1, 2015, provided by Yahoo! to UK Prosecutors in Mr. Knaggs' case.[1]
2. The contents of a "Business Records Declaration" by Yahoo! employee Julia Albert, sworn and executed on October 27, 2011, and provided by Yahoo! to UK Prosecutors in Mr. Knaggs' case.
3. The contents of a "Witness Statement" of Emily Nick, Deputy Compliance Manager for Yahoo!, sworn and executed on October 27, 2011, and provided by Yahoo! to UK Prosecutors in Mr. Knaggs' case.

---

[1] Ms. Lai admits in her second declaration that "The full details of the deletion process and timelines are beyond my knowledge." Therefore Mr. Knaggs does not currently seek her deposition and has targeted witnesses he believes to possess the relevant knowledge.

Chris Madsen
Yahoo! Inc.
October 21, 2015
Page 3

4. The contents of a "Business Records Declaration" by Emily Nick, Deputy Compliance Manager for Yahoo!, sworn and executed on July 5, 2012, and provided by Yahoo! to UK Prosecutors in Mr. Knaggs' case.

5. The information requests which the UK Prosecutors in Mr. Knaggs' case transmitted to Yahoo! by their letters of request dated February 8, 2010; February 20, 2011; and April 4, 2014, and the actions Yahoo! took in response to the requests.

Mr. Knaggs' request satisfies all the elements that U.S. federal courts require for discovery pursuant to 28 U.S.C. § 1782. The mandatory factors courts consider in weighing an application for such discovery are whether: "(1) the person from whom the discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or internal tribunal or 'any interested person'." In re Republic of Ecuador, No. C-10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010). See also Intel, 542 U.S. at 255. Mr. Knaggs' application meets these requirements. Each of these factors is met, because: (1) Yahoo resides in the Northern District; (2) the discovery sought is for use in the UK Proceeding, and (3) as a litigant in the U.K. proceeding, Mr. Knaggs clearly is an "interested party."

In addition to these mandatory factors, courts also consider the following discretionary factors: (i) whether the person from whom discovery is sought is a participant in the relevant foreign proceeding who is subject to discovery in that jurisdiction; (ii) the nature of the foreign tribunal, the character of the proceedings underway, and the receptivity of the foreign government, court or agency to federal-court judicial assistance, (iii) whether the Section 1782 application conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and (iv) whether the discovery requests are unduly intrusive or burdensome. See In Matter of Application of Action & Prot. Found. Daniel Bodnar, No. C1480076MISCEMCLB, 2014 WL 2795832, at *6 (N.D. Cal. June 19, 2014) (citing Intel, 542 U.S. at 264-65).

Each of the discretionary factors weighs in favor of granting the request. That is, (i) Yahoo is not a participant in the foreign proceeding, necessitating the requested relief so that Mr. Knaggs can obtain the information he needs; (ii) the nature of the foreign tribunal is routinely upheld as an appropriate one for foreign discovery assistance, and U.K. Courts are historically very inclined and receptive to the same; (iii) there is nothing to suggest that the request is an attempt to circumvent foreign discovery limitations on the part of Mr. Knaggs and (iv) the discovery requests are not at all burdensome or intrusive, as Yahoo has previously provided witness statements on the issues and the depositions sought will relate to similar topics, simply asking the Yahoo deponents about the same issues.

Chris Madsen
Yahoo! Inc.
October 21, 2015
Page 4

Accordingly, Mr. Knaggs qualifies for the relief provided under 28 U.S.C. § 1782.  Please advise whether Yahoo! will agree to produce the witnesses without a court order.  Thank you.

Very truly yours,

Carlos X. Colorado
Eagan Avenatti, LLP

CXC:mgn

05/08 2014 09:31 FAX                                                                         ☑002/005

# STATEMENT OF MICHELE LAI

I, Michele Lai, declare:

1.  I am a Custodian of Records and the Operations Manager of the U.S. Law Enforcement Response Team for Yahoo! Inc. ("Yahoo"), located in Sunnyvale, California. I am authorized to submit this statement on behalf of Yahoo, and do so in response to a subpoena dated May 13, 2014. I have personal knowledge of the following facts, except as noted. This statement consisting of 4 pages is true to the best of my knowledge and belief. *Michele*

2.  Based on my review of company records, I determined the following. On September 30, 2009, Yahoo received a preservation request from Jon Flaherty of the United Kingdom's Serious Organized Crime Agency pertaining to the Yahoo user account "slimjim25@ymail.com." For "slimjim25@yahoo.com," the following information was available for preservation and was in fact preserved on September 30, 2009: 1) the user profile, as produced by the Yahoo Account Management Tool; 2) the dates, times, and Internet Protocol addresses for log-in attempts by the account; 3) a snapshot of the email account contents maintained in the account; and (4) a snapshot of the email headers for the emails maintained in the account.

3.  Based on my review of company records, I determined the following. On April 19, 2010, Yahoo received, via facsimile, a search warrant pertaining to the Yahoo user account "slimjim25@ymail.com." The facsimile coversheet indicated that the search warrant "pertain[ed] to a Mutual Legal Assistance Treaty Request" from the United Kingdom. On May 7, 2010, a search by a Custodian of Records for Yahoo for records responsive to the search warrant was completed. The following information pertaining to "slimjim25@ymail.com" was gathered for production and was in fact produced to Special Agent Thuy Luong of the Federal Bureau of Investigation: 1) the user profile, as produced by the Yahoo Account Management Tool; 2) the dates, times, and Internet Protocol addresses for log-in attempts by the account; 3) a snapshot of the email account contents maintained in the account for the time period specified in the search warrant; 4) a snapshot of the email headers

Internal reference number: 256076

*Michele Lai*

05/08 2014 08:32 FAX @ 003/005

for the emails maintained in the account for the time period specified in the search warrant; 5) the email account contents preserved in response to the September 30, 2009, preservation request; and 6) the email headers for the emails maintained in the account preserved in response to the September 30, 2009, preservation request. In total four snapshots were produced—two that contained the email account contents (one from the September 30, 2009, preservation ("slimjim25@ymail.com_mailfullall_sep.30.2009.txt") and one from the April 19, 2010, search warrant ("slimjim25@ymail.com_mailfullall_may.7.2010.txt")) and two that were only the email headers for the email account contents (one from the September 30, 2009, preservation ("slimjim25@ymail.com_mailhoofall_sep.30.2009.txt") and one from the April 19, 2010, search warrant ("slimjim25@ymail.com_mailhoofall_may.7.2010.txt")). The headers-only snapshots each contained only a subset of the data in the full email account content snapshots.

4. Yahoo Mail is a service provided by Yahoo for users to send and receive email communications. A subscriber controls which communications are stored in his or her Mail account, and when responding to legal process Yahoo only has access to those communications retained by the subscriber, including those communications that are present in a subscriber's email "draft" and "trash" folders. If a user deletes a communication from his or her account, the communication becomes inaccessible to the proprietary tools Yahoo uses to gather communications data in response to preservation requests and search warrants.[1]

5. The term "snapshot" is used by Yahoo to describe the file created by its proprietary tool used to capture a copy of all the contents of a user's Yahoo Mail account at a given moment in time—the time a Custodian of Records submitted a request to the tool for the particular account. As noted above, communications that a user has not retained in his or her Mail

---

[1] Yahoo does backup communications content for account recovery purposes. These backup files are only accessible for the purpose of recovering user account content, at the request of a user, and are not accessible to the proprietary tools Yahoo uses to gather communications data in response to legal process. Users are able to submit requests for restoration of account content through an online form at http://help.yahoo.com/l/us/yahoo/mail/ymail/restore.html. I understand that it is this restoration process that is described/discussed in the Burgess Report at page 2.

Internal reference number: 256076

account are not accessible to the proprietary tool that Yahoo Custodians of Record use to gather communications data in response to preservation requests and search warrants. Accordingly, a snapshot will never contain a communication that was not present in a user's account at the time the snapshot was taken. Of course, subsequent to a snapshot being taken a user could delete from his or her account all or some of the communications that were previously present in the account and captured in the snapshot. In such a case, communications content could be produced to law enforcement which the user believed he or she had deleted.

6. The materials produced by Yahoo on May 7, 2010, pertaining to the Yahoo user account "slimjim25@ymail.com" were not the product of any continuous interception by Yahoo, any security service or any other body. However, once a user begins composing a message, Yahoo Mail automatically saves a draft of the message periodically into a user's draft folder. These drafts are retained in the user's account until the message is sent or composition is ended and the drafts deleted from the draft folder by the user. This feature protects a user's work against an interruption in power or connectivity, and is equally available to all users. Communications in the draft folder are accessible to the proprietary tools Yahoo uses to gather communications data in response to legal process.

7. With respect to the user data described herein, Yahoo servers recorded this data automatically at the time, or reasonably soon after, it is entered or transmitted, and this data was kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice.

8. The records produced in response to the April 19, 2010, search warrant were downloaded from a server that is regularly used to create, store, and produce Yahoo records and which ordinarily produces accurate and reliable records if used properly. The server was used properly and produced accurate and reliable records when it returned the information that was produced in response to the search warrant on May 7, 2010.

05/06 2014 09:32 FAX                                                                    ☑005/005

9.  Based on the above, as a factual matter, Yahoo could not have and did not produce any

    communications from the user account "slimjim25@ymail.com" that had been completely

    deleted from the account by the user.

I declare under penalty of perjury under the laws of the United States of America and the State of

California that the foregoing is true and correct.

DATED:  ___May 22, 2014_____          _____

                                             Michele Lai, Custodian of Records

                                                              Internal reference number: 256076

## STATEMENT OF MICHELE LAI

I, Michele Lai, declare:

1. I am a Custodian of Records and the Supervisor (formerly Operations Manager) of the U.S. Law Enforcement Response Team for Yahoo! Inc. ("Yahoo"), located in Sunnyvale, California. I am authorized to submit this statement on behalf of Yahoo, and do so as a supplement to a prior statement in response to a subpoena dated May 13, 2014. I have personal knowledge of the following facts, except as noted. This statement consisting of 4 pages is true to the best of my knowledge and belief.

2. In response to persistent suggestions that Yahoo may have misrepresented the facts of this case and/or operated a "wiretap" on the user account slimjim25@ymail.com, I undertook a review of the data produced in response to the search warrant received April 19, 2010, pertaining to slimjim25@ymail.com. Specifically, I reviewed the data contained in the two snapshots containing the email account contents: slimjim25@ymail.com_mailfullall_sep.30.2009.txt and slimjim25@ymail.com_mailfullall_may.7.2010.txt ("the produced snapshots").

3. At the outset, I reaffirm that the materials produced by Yahoo pertaining to the Yahoo user account slimjim25@ymail.com were not the product of any continuous interception by Yahoo at the direction of or to provide assistance to any security service or any other body. Each of the produced snapshots was created at a particular moment in time by a Custodian of Records submitting a request through a proprietary tool to retrieve all the contents of a user's Yahoo Mail account stored on Yahoo mail servers in response to valid legal process, i.e., a preservation request and search warrant both for stored communications content. An explanation of how and why the contents retrieved appear as they do follows.

4. My review of the produced snapshots focused on the X-RocketMail header of each email. The X-RocketMail header is unique to Yahoo's system and follows a standard format to present information about a particular message. The format of the X-RocketMail header is as follows:

Internal reference number: 256076

X-RocketMail: 0000000#;——————

where "#" is a numerical value indicating the folder a message resides in (e.g., Inbox or Drafts) and "–" are placeholders for a letters designating message status (e.g., forwarded or flagged as important). The overwhelming majority of messages in the snapshots had a numerical value of 3, indicating that the message resided in the Drafts folder of the account. The messages also had a letter designator of X, indicating, according to company documentation, that the message was "removed from mailbox view but still located on mail server." These same messages also appear to build up in serial in that they contain the text of earlier messages together with additional text. This is a function of an auto-save feature present and operating (then and now in some form) on all Yahoo email accounts when a user is composing a message—a message being composed is saved as a draft in the users account, and if the user is still composing the message at the next auto-save interval the previous draft is deleted (but not immediately removed from the mail server, as detailed below) and replaced with the new one.

5. Based on my review of company documentation, I understand that the deletion of an email is a multi-step process, and the removal of an email from what is visible to a user (i.e. "the mailbox view") is a beginning step. Removal of the message from the "mail server" where the user's mailbox data resides requires additional steps. The full details of the deletion process and timelines are beyond my knowledge, but the fact that an email can be deleted by a user and still remain on the mail server and associated with a user's account for some period of time resolves the apparent discrepancy in this matter. That is, Yahoo's proprietary tool was used to retrieve all the data for slimjim25@ymail.com that was present on a mail server, even though all that data was not visible to the user because some had previously been deleted.

6. Prior to reviewing the produced snapshots and additional company documentation, it was my belief that the proprietary tool used to retrieve email content only could access emails then

present and accessible to a user in his/her account. Thus, my prior statement included the following assertions:

> "[C]ommunications that a user has not retained in his or her Mail account are not accessible to the proprietary tool that Yahoo Custodians of Record use to gather communications data in response to preservation requests and search warrants. Accordingly, a snapshot will never contain a communication that was not present in a user's account at the time the snapshot was taken."

> and

> "[Yahoo] could not have and did not produce any communications from the user account 'slimjim25@ymail.com' that had been completely deleted from the account by the user."

Based upon my new understanding of the mail deletion process and the fact that the produced snapshots generated by the proprietary tool contained emails that were "removed from mailbox view but still located on mail server," I now state that:

> Communications that have been removed from Yahoo mail servers are not accessible to the proprietary tool that Yahoo Custodians of Record use to gather communications data in response to preservation requests and search warrants. Accordingly, the snapshots only contained messages (or drafts of messages) that were present on a Yahoo mail server at the time each snapshot was taken. In most instances, the messages in a snapshot will be those visible and accessible to the user. But, due to the complexity of the message deletion process, some deleted messages (including auto-saved drafts) may still be on a mail server and included in the snapshot. This was the case in Yahoo's production of the snapshots in this case. Yahoo did not produce any communications from the user account slimjim25@ymail.com that had been completely deleted from Yahoo mail servers. Additionally, Yahoo did not modify its systems to selectively retain on Yahoo mail servers messages deleted by the user from the user account slimjim25@ymail.com in greater quantity or for a longer duration than other user accounts.

7.  Finally, to clarify a matter that has generated some confusion (see, e.g., Report of Mark
    Abramson, Nov. 6 2012 at 13-14; Statement of Steven Burgess, Nov. 10, 2012 at 2-3; and
    Report of Clues, Nov. 28, 2012 at 3), the proprietary tool used by Yahoo to retrieve
    information pertaining to a user account in response to legal process is not the same tool used
    by Customer Care agents to restore emails deleted from an account.  Customer Care agents do
    not have knowledge of the tool used to produce material in response to legal process from law
    enforcement.

I declare under penalty of perjury under the laws of the United States of America and the State of
California that the foregoing is true and correct to the best of my knowledge and belief.

DATED: _____July 1, 2015_____          _____
                                                   Michele Lai, Custodian of Records

BUSINESS RECORDS DECLARATION

1

2                                                    )        Case No. 10-70300 PVT
                                                     )
3       Request for Documents regarding:             )        DECLARATION OF
4       slimjim25@ymail.com                          )        JULIA ALBERT
                                                     )
5                                                    )
                                                     )
6                                                    )
                                                     )
7       ────────────────────────────────────────────)

8

9       I, Julia Albert, declare:

10

11      1.      I am a Custodian of Records for Yahoo! Inc. ("Yahoo!"), located in Sunnyvale,

12              California. I am authorized to submit this declaration on behalf of Yahoo!. I make

13              this declaration pursuant to the Federal Rules of Evidence Rule 902(11) and in

14              response to a Search Warrant dated April 19, 2010. I have personal knowledge of

15              the following facts, except as noted, and could testify competently thereto if called

16              as a witness.

17

18      2.      Attached hereto are true and correct copies of 5 pages and 1 CD-R of the following

19              data pertaining to the Yahoo! ID identified in the Search Warrant: 1) the user

20              profile, as produced by the Yahoo! Account Management Tool; 2) the dates, times

21              and Internet Protocol ("IP") addresses for logins; 3) snapshots of the email account

22              contents maintained in the specified account; and 4) snapshots of the email headers

23              maintained in the specified account.   Yahoo!'s servers record this data

24              automatically at the time, or reasonably soon after, it is entered or transmitted, and

25              this data is kept in the course of this regularly conducted activity and was made by

26

27

28

1  regularly conducted activity as a regular practice. Yahoo! may not require or

2  verify user information because it offers many of its user services for free.

3

4      3.    Pursuant to the Federal Stored Communications Act, 18 U.S.C. §§2701, et seq., we

5  have redacted information, including removing certain data fields, that exceeds the

6  scope of this request, is protected from disclosure or is otherwise not subject to

7  production.

8

9      I declare under penalty of perjury under the laws of the United States of America and the

10  State of California that the foregoing is true and correct.

11

12  DATED: _____ May 7, 2010 _____           _Julia Albert_

13                                                     Julia Albert

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*WITNESS LIST*
*MEEC 128*
*U.VU3~9*

## Witness Statement

Date:  October 26, 2011

Statement of: Emily Nick

Occupation:  Deputy Compliance Manager

I am over 18 years of age, and this statement, consisting of 2 page(s), is true to the best of my knowledge and belief.

Signature: *Emily Nick*                                    Date: 10/27/11

I occupy the position of *Deputy Compliance Manager*
in the employment of *Yahoo! Inc.*
located at *701 First Avenue, Sunnyvale, California, USA*

By virtue of my position, I can state that each of the records exhibited in this statement are the originals or the duplicate of the original records in the custody of *Yahoo! Inc.*   I produce these records as my exhibit(s)[1] EN1 and explain them as follows[2]:

In response to a search warrant issued by U.S. law enforcement, Yahoo! on May 7, 2010 produced contents of the email account slimjim25@ymail.com for the time period January 1, 2009 to December 7, 2009 as requested.   Yahoo! previously detailed the contents produced in a declaration dated September 9, 2011, attached hereto as exhibit EN1.

---

[1] The exhibit number should consist of the witness' initials and a consecutive number. For example, the first document produced by John Andrew Smith will have the exhibit number JAS1, the second will be JAS2 and so on. An entire set of associated documents can be given a single exhibit number.

The production consisted of two snapshots that captured the contents of the slimjim25@ymail.com email account on the two separate dates that Yahoo! received requests from law enforcement – the first snapshot was created in response to the request to preserve all account contents for slimjim25@ymail.com, and the second snapshot was created in response to the request (the aforementioned search warrant) to produce all available account contents for the time period January 1, 2009 to December 7, 2009.  In order to respond fully to that search warrant, Yahoo! produced both snapshots, each redacted to be responsive to the time period specified by the warrant.

Yahoo! uses the word "snapshot" to describe its practice of making a copy of all email content that exists in any folders (inbox, sent, draft, or other folders) in an email account at a given moment in time – much like taking a picture on a camera captures an image at a given moment in time.   The contents of the email account may be altered at a later date (e.g., a user deletes email, sends new email, or receives new email), but the snapshot will not be altered by such actions.

Preservations performed by Yahoo! capture and store information available at the time of preservation.  Yahoo! does not preserve content prospectively.  As a general matter, a snapshot of email content will only capture the content that is available to a user in his email account at the time of preservation. Email that a user has deleted from his email account prior to the time of preservation is generally not available for preservation. Similarly, email that a user receives in his email account after the time of preservation

<hr>

[2] Please explain as required what each of the records are and what they purport to show unless they clearly do not need any explanation. Please also explain any acronyms, abbreviations or other technical terminology used within the records that a lay person might not understand

will not be captured.  Content that a user deletes after a snapshot is created is not removed from the preserved snapshot and will be available for production when the preserved snapshot is later requested.  A subsequent email snapshot will not contain emails that a user received and deleted after the first snapshot is made but before the later snapshot is made.

No mechanism is available to law enforcement to recover deleted emails that were not preserved by prior request.  Users who wish to recover deleted email from their own accounts may contact Yahoo! Customer Care.  As a general matter, such emails may be recoverable within 24 hours of deletion.

I can further state that:

   i.   The records were created or received by a person in the course of a trade, business, profession or other occupation, or as the holder of a paid or unpaid office;

   ii.  the person who originally supplied the information contained in the records had or may reasonably be supposed to have had personal knowledge of the matters dealt with; and

   iii. each person through whom the information was supplied received the information in the course of a trade, business, profession or other occupation, or as the holder of a paid or unpaid office.

Signature: _Emile Nini_          Date: _10/27/11_

Witness Statement

Date: October 25, 2011

Statement of: Emily Nick

Occupation: Deputy Compliance Manager

I am over 18 years of age, and this statement, consisting of 2 page(s), is true to the best of my knowledge and belief.

Signature: _____                    Date: _____

I occupy the position of *Deputy Compliance Manager* in the employment of *Yahoo! Inc.* located at *701 First Avenue, Sunnyvale, California, USA*.

By virtue of my position, I can state that each of the records exhibited in this statement are the originals or the duplicate of the original records in the custody of *Yahoo! Inc.* I produce these records as my exhibit(s) EN1 and explain them as follows[2]:

In response to a search warrant issued by U.S. law enforcement, Yahoo! on May 7, 2010 produced contents of the email account slimjim25@ymail.com for the time period January 1, 2009 to December 7, 2009 as requested. Yahoo! previously detailed the contents produced in a declaration dated September 9, 2011, attached hereto as exhibit EN1.

[1] This exhibit number should consist of the witness' initials and a consecutive number. For example, the first statement produced by John Andrew Smith will have the exhibit number JAS1, the second will be JAS2 and so on. An entire set of associated documents can be given a single exhibit number.

The production consisted of two snapshots that captured the contents of the slimjim25@ymail.com email account on the two separate dates that Yahoo! received requests from law enforcement – the first request was to preserve all account contents for slimjim25@ymail.com, and the second request (the aforementioned search warrant) was to produce all available account contents for the time period January 1, 2009 to December 7, 2009. In order to respond fully to that search warrant, Yahoo! produced both snapshots, each redacted to be responsive to the time period specified by the warrant.

Yahoo! uses the word "snapshot" to describe its practice of making a copy of all email content that exists in any folders (inbox, sent, draft, or other folders) in an email account at a given moment in time – much like taking a picture on a camera captures an image at a given moment in time.   The contents of the email account may be altered at a later date (e.g., a user deletes email, sends new email, or receives new email), but the snapshot will not be altered by such actions.

I can further state that:

    i.   The records were created or received by a person in the course of a trade, business, profession or other occupation, or as the holder of a paid or unpaid office;

    ii.   the person who originally supplied the information contained in the records had or may reasonably be supposed to have had personal knowledge of the matters dealt with; and

---

[2] Please explain as required what each of the records are and what they purport to show unless they clearly do not need any explanation. Please also explain any acronyms, abbreviations or other technical terminology used within the records that a lay person might not understand

iii. each person through whom the information was supplied received the information in the course of a trade, business, profession or other occupation, or as the holder of a paid or unpaid office.

Signature:_____     Date:_____

07/06/2012 09:40 FAX 505 542 0761          FREEDMAN BOYD                          ☑002

## BUSINESS RECORDS DECLARATION

Request for Information regarding:          )          **DECLARATION OF**
slimjim25@ymail.com                        )          **Emily Nick**
_____        )

I, Emily Nick, declare:

1. I am a Custodian of Records for Yahoo! Inc. ("Yahoo!"), located in Sunnyvale, California. I am authorized to submit this declaration on behalf of Yahoo!. I make this declaration pursuant to the Federal Rules of Evidence Rule 902(11) and the California Code of Evidence section 1561 and in response to a request dated April 16, 2012, and the verified consent of the user of the account slimjim25@ymail.com dated June 16, 2012 (collectively, "the request"). I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2. Attached hereto is one (1) CD-R/DVD-R that contains true and correct copies of all of the contents of the account slimjim25@ymail.com, i.e. emails and their header information, that Yahoo! had in its possession on May 7, 2010. The data contained on the CD-R/DVD-R is that which Yahoo!'s servers record automatically at the time, or reasonably soon after, it is entered or transmitted; is kept in the course of this regularly conducted activity; and is made by regularly conducted activity as a regular practice.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

DATED: _____July 5, 2012_____          _____
                                                Emily Nick

Alun Milford
Director Organised Crime Division



**CPS**

To the Competent Judicial Authorities,
Office of International Affairs,
Department of Justice,
WASHINGTON D.C.
United States of America

Our reference: IW
8th February 2010

Dear Sirs,

## Letter of Request: Operation Dearly

I have the honour to request your assistance under the provisions of the Treaty of Mutual Legal
Assistance in Criminal Matters (1994) between The United States of America and the United
Kingdom in relation to a criminal investigation being conducted by officers of the Serious &
Organised Crime Agency.

The Prosecution of Offences Act (1985) states that the Director of Public Prosecutions has the duty to
take over the conduct of criminal proceedings (other than certain proceedings relating to relatively
minor offences) instituted on behalf of a Police Force. The Director is the Head of the Crown
Prosecution Service. As a Crown Prosecutor designated by him I have his powers to conduct any
proceedings, which may be instituted in this case. Section 7(5) of the Crime (International Co-
operation) Act 2003 authorises a designated prosecuting authority to issue a letter of request
requesting mutual assistance from another state. The Crime (International Co-operation) Act 2003
(Designation of Prosecuting Authorities) Order 2004 designates the Director of Public Prosecutions
and any Crown Prosecutor. Accordingly, I am empowered to issue this Letter.

An offence is under investigation in relation to:-

Name:              Duberley NARVAEZ ALVAREZ
Address:           19 Helsinki Gardens, London. SE16 7UT.
Date of birth:     18th March 1968
Nationality:       Colombian

Name:              Russell KNAGGS
Address:           Lowdham Grange Prison, Lowdham, Nottinghamshire,
                   United Kingdom
Date of birth:     13th October 1973
Nationality:       British

Name:          Phillip William HADLEY
Address:       Flat 2 23 New Hill, Conisbrough, Doncaster, South Yorkshire,
               United Kingdom
Date of birth: 18th August 1959
Nationality:   British

Name:          Robert Peter RICH
Address:       4 Matthew House, Hall Balk Lane,
               Barnsley, Doncaster, United Kingdom
Date of birth: 12th January1972
Nationality:   British

Name:          Cassim KOUBARI
Address:       Lowdham Grange Prison, Lowdham, Nottinghamshire,
               United Kingdom
Date of birth: 29th October 1972
Nationality:   Belgian

Name:          Anthony PERGER
Address:       65, Hall Road, Hansworth, Sheffield,
               United Kingdom
Date of birth: 12th November 1960
Nationality:   British

Name:          Melvin SMIT
Address:       Ringoven, KO 6042, Roermond, The Netherlands
Date of birth: 13th February 1977
Nationality:   Dutch

Name:          Dorata SIEMCZUK
Address:       Wejhorowo, Poland
Date of birth: 22nd November 1982
Nationality:   Polish

Name:          Jesus Anibal RUIZ HENAEO
Address:       Lowdham Grange Prison, Lowdham, Nottinghamshire,
               United Kingdom
Date of birth: 1st March 1960
Nationality:   Colombian

Officers of the Serious & Organised Crime Agency (S.O.C.A.) have consulted the Crown Prosecution Service in relation to alleged offences of conspiracy to supply Class A drugs, namely cocaine and heroin, and conspiracy to import such drugs into the United Kingdom, which they have reasonable grounds to believe that these suspects are engaged in.

ENGLISH LAW
The supply of Class A drugs is an offence contrary to Section 4 of the Misuse of Drugs Act 1971.
A conspiracy to supply Class A drugs is an offence contrary to Section 1 of the Criminal Law Act 1977.
The importation of Class A drugs is an offence under Section 170 (2) of the Customs and Excise Management Act 1979.
A conspiracy to import such drugs is an offence under Section 1 of the Criminal Law Act 1977.
All of these offences carry a penalty upon conviction on indictment of life imprisonment.

2

## PRESERVATION OF EVIDENCE

A preservation request under 18 U.S.C. § 2703(f) in relation to the account slimjim25@yahoo.com has been made by the Serious & Organised Crime Agency.

## ENQUIRIES TO BE MADE

1. After obtaining any appropriate subpoena, search warrant, court order or other order, to obtain a witness statement in writing from an administrator at –

   Yahoo! Inc
   701 First Avenue
   Sunnyvale
   California 94089

concerning e-mail/web mail accounts slimjim25@yahoo.com, slimjim25@ymail.com and rob.rich@ymail.com and setting out all of the information held by Yahoo! Inc relating to the accounts set out above including, but not limited to:

a. All stored communications and other files reflecting communications to or from these E-mail/web mail accounts between 1st January 2009 and 7th December 2009.
b. All files that have been accessed by these e-mail/web mail accounts between 1st January 2009 and 7th December 2009, or are controlled by user accounts associated with slimjim25@yahoo.com, slimjim25@ymail.com, rob.rich@ymail.com.
c. All connection logs and records of user activity for slimjim25@yahoo.com, slimjim25@ymail.com and rob.rich@ymail.com between 1st January 2009 and 7th December 2009, including -
i. Connection date and time;
ii. Disconnect date and time;
iii. Method of connection (e.g., telnet, ftp, http);
iv. Type of connection (e.g., modem, cable / DSL, T1/LAN);
v. Data transfer volume;
vi. User name associated with the connection and other connection information, including the Internet Protocol address of the source of the connection;
vii. Telephone caller identification records;
viii. Records of files or system attributes accessed, modified, or added by the user;
ix. All contact lists, address lists, buddy lists or other such data associated with the account;
x. Any opened or unopened communications;
xi. Connection information for other computers to which the users of the slimjim25@yahoo.com, slimjim25@ymail.com and rob.rich@ymail.com between 1st January 2009 and 7th December 2009 connected, by any means, during the connection period, including the destination IP address, connection time and date, disconnect time and date, method of connection to the destination computer, the identities (account and screen names) and subscriber information, if known, for any person or entity to which such connection information relates, and all other information related to the connection from ISP or its subsidiaries.

2. That such other enquiries are made, persons interviewed and exhibits secured as appear to be necessary in the course of the investigation.

3. That an indication be obtained of the willingness of any witness to travel to the United Kingdom to give evidence in person.

3

4. That any information held on computer in any form be preserved and secured from unauthorised interference and made available to the investigating officers and the Crown Prosecution Service for use at any subsequent trial.

## ASSISTANCE REQUIRED

1. It is requested that the above enquiries are made and that permission be given for the original or signed and certified copies of any statements made and documents or other items secured during the course of the enquiries be removed to be forwarded to the United Kingdom Central Authority for use in the investigation, any criminal proceedings, trial, confiscation and enforcement proceedings.

2. It is requested that copies of the above items are sent to the officer in the case, William Butterworth, United Kingdom.
   His telephone number is
   His fax number is
   His e-mail address is

3. Any queries regarding this matter should be addressed either to the officer in the case or to Ian Welch of the Organised Crime Division, Crown Prosecution Service, c/o Colmore Gate, 2, Colmore Row, Birmingham, United Kingdom..
   His telephone number is
   His fax number is
   His e-mail address is

## FORM IN WHICH IT IS REQUESTED THAT EVIDENCE IS TAKEN

1. It is requested that the witness statements be taken in writing, dated and headed by the following declaration "This statement consisting of ____ pages is true to the best of my knowledge and belief". The number of pages should be filled in the space once the statement has been written and the witness should sign the statement beside the declaration, on every page and at the end of the statement. Please date the statements. It is requested that the witness' address, telephone and fax numbers and date of birth, together with their availability to attend court in England, be written on the back of the first page of each statement.

2. If documentation is obtained from a witness, the witness should produce each document and give it an exhibit number. The exhibit number should consist of the witness' initials and a consecutive number. For example, the first document produced by John Andrew Smith will have the exhibit number JAS1, the second will be JAS2 and so on.

3. The witnesses should state their position in the organisation and produce the documents as set out above. In relation to such documents the witnesses should be asked to state whether they wrote the documents. If they were not written by them, the witnesses should state how the documents were created and in particular:

   a. whether they were created by a person in the course of a trade, business or profession or other occupation;

4
CAA

b.  whether the information contained in the documents was supplied by a person (whether or not he was the person who made them) who had, or may reasonably be supposed to have had, personal knowledge of the matters dealt with;

c.  if the information was not supplied directly, whether each person through whom it was supplied receive it in the course of a trade, business, profession or other occupation.

The witness statement should therefore include the following words :
"In order to carry out my duties I have access to all the records, both manual and computerised, relating to I.P. addresses *(I.P. address)*.  The documents to which I refer are derived from and form part of the records relating to the business of *(Name of the business)* and were compiled in the ordinary course of business from information recorded by persons who had, or may reasonably be supposed to have had, personal knowledge of the matter dealt with in the information they supplied."

## RECIPROCITY

I confirm that the material, which is requested to be provided by these enquiries could be obtained by the police under the current law and powers in England and Wales if the material was located in England and Wales.

I thank you in advance for your valuable co-operation covering this case.

Signed :


I R Welch
Crown Prosecutor


Organised Crime Div:
Crown Prosecution Se
c/o Colmore
2 Colmore
Birmingham B3
DX No 719544 Birmingha

T: 0121 616
F: 0121 616

Enquiries@cps.gsi.g
www.cps.g



INVESTOR IN PEOPLE

Gregor McGill
Head of Organised Crime Division



CPS

Our ref:    JF/IM
Your ref:

04 April 2014

Dear Sirs,

**Third Letter of Request: Operation Dearly**
**The Court of Appeal 15ᵗʰ May 2014**

I have the honour to request your further assistance under the provisions of the Treaty of Mutual
Legal Assistance in Criminal Matters (1994) between the United States of America and the United
Kingdom in relation to a criminal prosecution following investigation being conducted by officers of the
Serious & Organised Crime Agency – now part of the National Crime Agency.

The earlier Letters of Request were dated 8ᵗʰ February 2010 and 10ᵗʰ February 2011.

The Prosecution of Offences Act (1985) states that the Director of Public Prosecutions has the duty to
take over the conduct of criminal proceedings (other than certain proceedings relating to relatively minor
offences) instituted on behalf of a Police Force. The Director is the Head of the Crown Prosecution
Service. As a Crown Prosecutor designated by him I have his powers to conduct any proceedings, which
may be instituted in this case. Section 7(5) of the Crime (International Cooperation) Act 2003 authorises
a designated prosecuting authority to issue a letter of request requesting mutual assistance from another
state. The Crime (International Co-operation) Act 2003 (Designation of Prosecuting Authorities) Order
2004 designates the Director of Public Prosecutions and any Crown Prosecutor. Accordingly, I am
empowered to issue this Letter.

A number of individuals have been prosecuted and convicted at a trial at which the Prosecution adduced
evidence supplied in response to the first and second Letters of Request. The convictions were for an
offence of conspiring to contravene section 170 of the Customs and Excise Act of 1979, contrary to

Organised Crime Division, Crown Prosecution Service, c/o Colmore Gate, 2, Colmore Row, Birmingham, B3 2QA
DX: 743163 Birmingham 77
Telephone 0121 616 3300
Facsimile 0121 616 3301
OCD.Birmingham@cps.gsi.gov.uk
OCD.Birmingham@cps.gsi.gov.uk.cjsm.net
www.cps.gov.uk




section 1(1) of the Criminal Law 1979 – effectively a conspiracy to import cocaine into England and Wales from Colombia. The following individuals have been granted leave to appeal their convictions.

| | |
|---|---|
| Name | **Russell John Knaggs** |
| Address | HMP Woodhill<br>Tattenhoe Street<br>Milton Keynes<br>MK4 4DA |
| Date of Birth | 13th October 1973 |
| Nationality | British |
| Name | **Philip William Hadley** |
| Address | HMP Woodhill<br>Tattenhoe Street<br>Milton Keynes<br>MK4 4DA |
| Date of Birth | 18th August 1959 |
| Nationality | British |
| Name | **Robert Rich** |
| Address | HMP Woodhill<br>Tattenhoe Street<br>Milton Keynes<br>MK4 4DA |
| Date of Birth | 12th November 1972 |
| Nationality | British |

**ENGLISH LAW**

The importation of Class A drugs is an offence under Section 170 (2) of the Customs and Excise Management Act 1979.

12



A conspiracy to import Class A drugs is an offence under Section 1 of the Criminal Law Act 1977.

Both these offences carry a penalty upon conviction on indictment of life imprisonment.

## SUMMARY OF FACTS

The summary of facts of the prosecution case against the Appellants is as stated in the Letter of Request of 10th February 2010.

The three Appellants were tried with others at Birmingham Crown Court. They were convicted on 20th February 2012 and sentenced on 2nd March 2012.

Russell John Knaggs was imprisoned for 20 years

Philip John Hadley was imprisoned for 18 years

Robert Rich was imprisoned for 14 years

All three Appellants have been given leave to appeal their convictions. Part of the appeal relates to the evidence obtained through the first and second Letters of Request from Yahoo! With regard to that material the Appellants have alleged. **The case will be listed at the Court of Appeal on 15th May 2014** and I would be most grateful if this request for assistance could be expedited so that we had a response by 9th May.

1. The Yahoo! 'slim jim' employed a draft email in the Yahoo! account as a messaging board. They wrote, edited, re-wrote and deleted draft emails but never sent one. The users of the 'slim jim' e-mail account said that they deleted the draft e-mails after reading them.

2. The Appellants had reports from three experts that stated that the evidence of the draft e-mails supplied by Yahoo! could only have been captured in 'real time' as they were being written and that interception occurred continuously over several months even while draft e-mails where in the process of being edited.

3. The material was gathered as part of the United States and United Kingdom security services as part of the "secret world wide surveillance programme called 'Prism'"

4. Unless a deleted draft e-mail had been preserved by prior request, it could not have been retrieved by Yahoo! It follows that if the draft e-mails were deleted prior to the making of the Preservation Order on 29th September 2009 it should not have been possible to produce them.

Copies of the Reports produced by the Appellants are appended to this Letter of Request:

Appendix A – Report of Mark Abramson dated 11th June 2012

Appendix B – Report of Steven B Burgess dated 10th November 2012

Appendix C – Report of Bevan John Clues dated 28th November 2012



Although these reports were obtained in 2012 they were only served on the Crown in February this year.

## ENQUIRIES TO BE MADE

1.  After obtaining any appropriate subpoena, search warrant, court order or other order, to obtain a witness statement in writing from an officer of Yahoo! Inc., 701 First Avenue, Sunnyvale, California 94089

    a.  To confirm that the material produced by that company in response to the Letters of Request issued in this case was material held by Yahoo! in response to the Preservation Order obtained.

    b.  To confirm that the material supplied was not the product of any continuous interception by any security service or other body.

    c.  To supply an explanation of the way in which draft emails are saved on the Yahoo! system and why it is saved as a series of "snapshots"

    d.  To comment on the assertions in the appended reports and, in particular, to respond to any statements which the officer believes are inaccurate or misleading.

2.  That such other enquiries are made, persons interviewed and exhibits secured as appear to be necessary in the course of the investigation.

3.  That an indication be obtained of the willingness of any witness to travel to the United Kingdom to give evidence in person.

4.  That any information held on computer in any form be preserved and secured from unauthorised interference and made available to the investigating officers and the Crown Prosecution Service for use in any hearing before an Appellate Court in England and Wales or at any subsequent re-trial.

## ASSISTANCE REQUIRED

1.  It is requested that the above enquiries are made and that permission be given for the original or signed and certified copies of any statements made and documents or other items secured during the course of the enquiries be removed to be forwarded to the United Kingdom Central Authority for use in the investigation, or in any extradition proceedings, criminal proceedings, trial, confiscation and enforcement proceedings.

2.  It is requested that the witness statements be taken in writing, dated and headed by the following declaration "This statement consisting of _____ pages is true to the best of my knowledge and belief." The number of pages should be filled in the space once the statement has been written and the witness should sign the statement beside the declaration, on every page and at the end of the statement

14



(a) It is requested that the witness' address, telephone and fax numbers and date of birth, together with their availability to attend court in England, be written on the back of the first page of each statement.

(b) If documentation is obtained from a witness, the witness should produce each document and give it an exhibit number. This exhibit number should consist of the witness' initials and a consecutive number.

(c) The witnesses should state their position in the organisation and produce the documents as set out above. In relation to the documents the witnesses should be asked to state whether they wrote the documents. If they were not written by them, the witnesses should state how the documents were creates and in particular :

    i.   whether they were created by a person in the course of a trade, business or profession or other occupation;

    ii.   whether the information contained in the documents was supplied by a person (whether or not he was the person who made them) who had, or may reasonably be supposed to have had, personal knowledge of the matters dealt with;

    iii.   if the information was not supplied directly, whether each person through whom it was supplied received it in the course of a trade, business, profession or other occupation.

3.  Unless you indicate otherwise, any evidence obtained pursuant to this request may be used in any criminal prosecution and related ancillary proceedings (including trials, restraint, confiscation and enforcement hearings) arising in whole or in part from the above noted investigation / prosecution, whether relating to the above named subject(s) or to any other persons who may become a subject of this investigation / prosecution. Unless otherwise informed we understand that you have no objection to the evidence obtained being kept at the conclusion of proceedings.

**UNITED KINGDOM CONTACTS**

This Letter of Request is sent by direct transmission and I ask that any evidence obtained is returned directly to this office.

The Lawyer with direct conduct of this case is Mrs.Jacqueline Finn who can be contacted at

Address:     CPS Organised Crime Division
                C/o Colmore Gate
                2, Colmore Row
                Birmingham
                B3 2QA

Telephone:

Facsimile:

Email



The Investigating Officer is

Senior Officer  Paul Ashton

Address:


Telephone:

Facsimile:

Email:

**RECIPROCITY**

I confirm that the material, which is requested to be provided by these enquiries, could be obtained by the police under the current law and powers in England and Wales if the material was located in England and Wales.

I thank you in advance for your valuable assistance in this matter.

Yours faithfully,



**JACQUELINE FINN**
Specialist Prosecutor

# YAHOO!

## Yahoo makes the world's daily habits inspiring and entertaining.

We create highly personalized experiences that keep our users connected to the things that matter most, across devices and around the world. In turn, we deliver value for advertisers by connecting them with the right audiences.

## Official Yahoo Tumblr


Tune in Today! Digital Democracy: The Yahoo Conference on Technology & Politics
November 12, 2015

Expanding our Data Center in La Vista, Nebraska
November 09, 2015


Enjoy the New Yahoo Search, Exclusively on Firefox
November 12, 2015


Introducing Flickr for iOS 9 with Extended 3D Touch and Spotlight Search Features
November 05, 2015

More Blog Posts

## Press Releases

Yahoo Releases New Survey on the Impact of Technology on Politics in the United States
November 12, 2015

Yahoo Delivers Over 33.6M Streams of the First Free Global Live Stream of an NFL Game
October 26, 2015

Bob Lord Joins Yahoo as New Chief Information Security Officer
October 26, 2015

More Press Releases

# $33.23  0.15 (-0.45%)

Yahoo! Inc. (YHOO) - NASDAQ

3:59 PM EST



Quarterly Earnings

Corporate Governance

Yahoo Investor Relations

Stock Information

Reports

  2014 Annual Report
HTML   PDF

YAHOO!  2015 Proxy Statement
PDF

## Contact Yahoo

Follow Yahoo

Yahoo is headquartered in Sunnyvale, California,
and has offices in 25 countries, provinces, and
territories.

Yahoo
701 First Avenue
Sunnyvale, CA 94089

Corporate Information - Yahoo - Company Information

Phone: (408) 349-3300
Fax: (408) 349-3301

Press Inquiries  |  Help

Corporate Home

Privacy

Terms

Community Guidelines

Copyright/IP

Safety

Transparency

Help

Yahoo Terms Center

Home    Mail    Search    News    Sports    Finance    Weather    Games    @Install the new Firefox ×    F

Search Web

**Yahoo Terms Center**

Yahoo Info Center > Yahoo Terms Center > Publiclicense

Email this Page        Print this Page

# YAHOO! PUBLIC LICENSE 1.0

This Yahoo Public License (this "Agreement") is a legal agreement that describes the terms under which Yahoo! Inc., a Delaware corporation having its principal place of business at 701 First Avenue, Sunnyvale, California 94089 ("Yahoo") will provide software to you via download or otherwise ("Software"). By using the Software, you, an individual or an entity ("You") agree to the terms of this Agreement.

In consideration of the mutual promises and upon the terms and conditions set forth below, the parties agree as follows:

1. Grant of Copyright License

   1.1 Subject to the terms and conditions of this Agreement, Yahoo hereby grants to You, under any and all of its copyright interest in and to the Software, a royalty-free, non-exclusive, non-transferable license to copy, modify, compile, execute, and distribute the Software and Modifications. For the purposes of this Agreement, any change to, addition to, or abridgement of the Software made by You is a "**Modification**;" however, any file You add to the Software that does not contain any part of the Software is not a "Modification."

   1.2 If You are an individual acting on behalf of a corporation or other entity, Your use of the Software or any Modification is subject to Your having the authority to bind such corporation or entity to this Agreement. Providing copies to persons within such corporation or entity is not considered distribution for purposes of this Agreement.

   1.3 For the Software or any Modification You distribute in source code format, You must do so only under the terms of this Agreement, and You must include a complete copy of this Agreement with Your distribution. With respect to any Modification You distribute in source code format, the terms of this Agreement will apply to You in the same way those terms apply to Yahoo with respect to the Software. In other words, when You are distributing Modifications under this Agreement, You "stand in the shoes" of Yahoo in terms of the rights You grant and how the terms and conditions apply to You and the licensees of Your Modifications. Notwithstanding the foregoing, when You "stand in the shoes" of Yahoo, You are not subject to the jurisdiction provision under Section 7, which requires all disputes under this Agreement to be subject to the jurisdiction of federal or state courts of northern California.

   1.4 For the Software or any Modification You distribute in compiled or object code format, You must also provide recipients with access to the Software or Modification in source code format along with a complete copy of this Agreement. The distribution of the Software or Modifications in compiled or object code format may be under a license of Your choice, provided that You are in compliance with the terms of this Agreement. In addition, You must make absolutely clear that any license terms applying to such Software or Modification that differ from this Agreement are offered by You alone and not by Yahoo, and that such license does not restrict recipients from exercising rights in the source code to the Software granted by Yahoo under this Agreement or rights in the source code to any Modification granted by You as described in Section 1.3.

   1.5 This Agreement does not limit Your right to distribute files that are entirely Your own work (i.e., which do not incorporate any portion of the Software and are not Modifications) under any terms You choose.

Yahoo Terms Center

Yahoo has no obligation to provide technical support or updates to You. Nothing in this Agreement requires Yahoo to enter into any license with You for any other edition of the Software.

3. Intellectual Property Rights

3.1 Except for the license expressly granted under copyright in Section 1.1, no rights, licenses or forbearances are granted or may arise in relation to this Agreement whether expressly, by implication, exhaustion, estoppel or otherwise. All rights, including all intellectual property rights, that are not expressly granted under this Agreement are hereby reserved.

3.2 In any copy of the Software or in any Modification you create, You must retain and reproduce, any and all copyright, patent, trademark, and attribution notices that are included in the Software in the same form as they appear in the Software. This includes the preservation of attribution notices in the form of trademarks or logos that exist within a user interface of the Software.

3.3 This license does not grant You rights to use any party's name, logo, or trademarks, except solely as necessary to comply with Section 3.2.

4. Disclaimer of Warranties

THE SOFTWARE IS PROVIDED "AS IS" AND WITHOUT WARRANTY OF ANY KIND. YAHOO! MAKES NO WARRANTIES, WHETHER EXPRESS, IMPLIED, OR STATUTORY REGARDING OR RELATING TO THE SOFTWARE. SPECIFICALLY, YAHOO! DOES NOT WARRANT THAT THE SOFTWARE WILL BE ERROR FREE OR WILL PERFORM IN AN UNINTERRUPTED MANNER. TO THE GREATEST EXTENT ALLOWED BY LAW, YAHOO! SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE (EVEN IF YAHOO! HAD BEEN INFORMED OF SUCH PURPOSE), AND NONINFRINGEMENT WITH RESPECT TO THE SOFTWARE, ANY MODIFICATIONS THERETO AND WITH RESPECT TO THE USE OF THE FOREGOING.

5. Limitation of Liability

IN NO EVENT WILL YAHOO! BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, LOSS OF USE, BUSINESS INTERRUPTION, LOSS OF DATA, COST OF COVER) IN CONNECTION WITH OR ARISING OUT OF OR RELATING TO THE FURNISHING, PERFORMANCE OR USE OF THE SOFTWARE OR ANY OTHER RIGHTS GRANTED HEREUNDER, WHETHER ALLEGED AS A BREACH OF CONTRACT OR TORTIOUS CONDUCT, INCLUDING NEGLIGENCE, AND EVEN IF YAHOO! HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

6. Term and Termination

6.1 This Agreement will continue in effect unless and until terminated earlier pursuant to this Section 6.

6.2 In the event Yahoo determines that You have breached this Agreement, Yahoo may terminate this Agreement.

6.3 All licenses granted hereunder shall terminate upon the termination of this Agreement. Termination will be in addition to any rights and remedies available to Yahoo at law or equity or under this Agreement.

6.4 Termination of this Agreement will not affect the provisions regarding reservation of rights (Section 3.1), provisions disclaiming or limiting Yahoo's liability (Sections 4 and 5), Termination (Section 6) or Miscellaneous (Section 7), which provisions will survive termination of this Agreement.

Yahoo Terms Center

Home   7. **Miscellaneous** ch   News   Sports   Finance   Weather   Games   Install the new Firefox »   F

Search Web

This Agreement contains the entire agreement of the parties with respect to the subject matter of this Agreement and supersedes all previous communications, representations, understandings and agreements, either oral or written, between the parties with respect to said subject matter. The relationship of the parties hereunder is that of independent contractors, and this Agreement will not be construed as creating an agency, partnership, joint venture or any other form of legal association between the parties. If any term, condition, or provision in this Agreement is found to be invalid, unlawful or unenforceable to any extent, this Agreement will be construed in a manner that most closely effectuates the intent of this Agreement. Such invalid term, condition or provision will be severed from the remaining terms, conditions and provisions, which will continue to be valid and enforceable to the fullest extent permitted by law. This Agreement will be interpreted and construed in accordance with the laws of the State of California and the United States of America, without regard to conflict of law principles. The U.N. Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. All disputes arising out of this Agreement involving Yahoo or any of its subsidiaries shall be subject to the jurisdiction of the federal or state courts of northern California, with venue lying in Santa Clara County, California. No rights may be assigned, no obligations may be delegated, and this Agreement may not be transferred by You, in whole or in part, whether voluntary or by operation of law, including by way of sale of assets, merger or consolidation, without the prior written consent of Yahoo, and any purported assignment, delegation or transfer without such consent shall be void ab initio. Any waiver of the provisions of this Agreement or of a party's rights or remedies under this Agreement must be in writing to be effective. Failure, neglect or delay by a party to enforce the provisions of this Agreement or its rights or remedies at any time, will not be construed or be deemed to be a waiver of such party's rights under this Agreement and will not in any way affect the validity of the whole or any part of this Agreement or prejudice such party's right to take subsequent action.