EAGAN AVENATTI, LLP
Carlos X. Colorado, SBN 231031
ccolorado@eaganavenatti.com
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Telephone:    (949) 706-7000
Facsimile:    (949) 706-7050

Attorneys for Petitioner RUSSELL KNAGGS

Anna Hsia (SBN 234179)
ZWILLGEN LAW LLP
235 Montgomery Street, Suite 425
San Francisco, CA 94104
Telephone: (415) 590-2341
Facsimile:  (415) 636-5965
anna@zwillgen.com

Bart Huff (admitted *pro hac vice*)
ZWILLGEN PLLC
300 N. LaSalle Street, Suite 4925
Chicago, IL  60654
Telephone:  (312) 685-2278

Nury Siekkinen (admitted *pro hac vice*)
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC  20036
Telephone:  (202) 296-3585
nury@zwillgen.com

Attorneys for Respondent YAHOO! INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Application Pursuant to 28 U.S.C. § 1782 of RUSSELL KNAGGS,<br><br>Petitioner,<br><br>- to take discovery of -<br><br>YAHOO! INC.,<br><br>Respondent. | Case No.:    5:15-mc-80281-MEJ<br>Judge:        Honorable Maria-Elena James<br><br>**JOINT MEET AND CONFER STATEMENT OF PETITIONER RUSSELL KNAGGS AND RESPONDENT YAHOO! INC.**<br><br>Hearing Date:    July 14, 2016<br>Time:            10:00 A.M.<br>Dept.:           Courtroom B, 15th Flr. |

**JOINT MEET AND CONFER STATEMENT**

## I. INTRODUCTION

Pursuant to the Court's June 22, 2016 Order [Dkt No. 23], the parties through their counsel of record held a telephonic meet and confer regarding this dispute at noon, California time, on July 6, 2016. Carlos X. Colorado of Eagan Avenatti, LLP, participated on behalf of Petitioner Russell Knaggs ("Knaggs"). Bart Huff and Nury Siekkinen of ZwillGen PLLC participated on behalf of Respondent Yahoo! Inc. ("Yahoo"). The telephonic meet and confer lasted approximately one hour.

## II. KNAGGS' COMPROMISE POSITION

Petitioner's proposal to try to resolve the dispute amicably at the meet and confer session was for Petitioner to forego a 30(b)(6) deposition and for Yahoo to produce the documents identified by Petitioner's experts and requested by Petitioner. Yahoo rejected Petitioner's meet and confer proposal.

### A. Relevant Background

Petitioner has made significant concessions in the course of the parties' negotiations to try to obtain the required discovery. In his original Petition [Dkt No. 1], Mr. Knaggs asked for the depositions of three named individuals whom Petitioner's investigations had identified as having knowledge of relevant matters. The scope of the depositions extended to the various statements that Yahoo has provided over the years with respect to the Yahoo email account at issue.

At Yahoo's insistence, Petitioner agreed not to pursue those depositions, attempting instead to obtain the information through written interrogatories. As more fully set forth in Petitioner's Motion [Dkt No. 13], those efforts did not yield complete information and were beset by disagreements between the parties about the proper scope of the information and the proper interpretation of the responses given, among other matters. Petitioner made further concessions when he filed the instant motion, scaling back the request from the deposition of three witnesses, to a request for a single deposition of a person most qualified on four topics: (1) legal requests for information from the subject email account; (2) the manner of extracting information from the subject email account; (3) Yahoo!'s information management policies; and (4) the bases for Yahoo!'s interrogatory responses. [Dkt No. 24 at 5-7] The latter request includes a request for the production of documents. [Id.] Because Yahoo declined identifying the documents it relied on with specificity, Petitioner's experts have supplied a list of documents they believe to be relevant to this inquiry.

### B. Foregoing a Deposition Would Have Been a Substantial Concession

Depositions are the preferred method of discovery over other devices in international discovery proceedings, Madanes v. Madanes, 199 F.R.D. 135, 142 (S.D.N.Y. 2001), and are "incomparably preferable to written interrogatories as a vehicle for seeking out useful evidence." Hendricks v. Coughlin, 114 F.3d 390, 394 (2d Cir.1997). Petitioner seeks to depose the person most qualified to testify regarding the aforementioned topics in order to: (1) test Yahoo's representation regarding the auto-save feature applicable to the subject email account, Yahoo's email deletion process, and its snapshot tool; (2) to reconcile inconsistencies and discrepancies in Yahoo's statements to Petitioner regarding the foregoing—which have been detailed in Petitioner's papers [See Dkt No. 13 at 11-13; Dkt No. 24 at 7-9]; and (3) to reconcile inconsistencies and discrepancies between Yahoo's statements to Petitioner and Yahoo's statements to the general public regarding the foregoing [See, e.g., Dkt No. 1-1 at 12, ¶7 (Statement of Michele Lai acknowledging discrepancy between Yahoo's explanations in this case and statements made by Yahoo's customer service department).

However, Petitioner offered to forego the deposition in the interest of finding an agreed solution to the parties' dispute.

### C.    The Documents Petitioner Has Requested Are Essential for His Investigation

Petitioner is entitled to the production of documents.[1]  See, e.g., In re Request For Judicial Assistance From Seoul Dist. Criminal Court, Seoul, Korea, 428 F. Supp. 109, 114 (N.D. Cal.), aff'd sub nom. In re Request For Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea, 555 F.2d 720 (9th Cir. 1977).  Petitioner needs these documents to understand Yahoo's auto-save feature, Yahoo's email deletion process, and its snapshot tool. Yahoo's own Manager/Supervisor of its U.S. Law Enforcement Response Team has pointed to unidentified documents as necessary to her understanding of Yahoo!'s "complex[] message deletion process" and to justify Yahoo!'s dramatic about-face on the process.  She has even quoted from and referred to unnamed documents in attempting to justify her explanations.  Indeed, even in her declaration filed with Yahoo!'s Opposition to this Motion, Ms. Lai (now Ms. Chan) refers to unspecified "relevant documentation." [D.E. 15-2 at ¶1.]  Accordingly, Petitioner insisted that Yahoo produce the requested documents.

### III.    YAHOO'S RESPONSE TO KNAGGS' POSITION

Yahoo, a third-party discovery respondent in a foreign criminal case, should not be forced to submit to a wide-ranging 30(b)(6) deposition and breathtakingly broad document requests, particularly where there is no evidence supporting Petitioner's conjecture regarding nefarious government surveillance. As the briefing on Petitioner's Motion for an Order Directing Yahoo to Submit to a 30(b)(6) Deposition and to Produce Documents ("Motion to Compel") has shown, Yahoo has given Petitioner fulsome responses to his specific substantive inquiries, both formal and informal. Yahoo has repeatedly and definitively answered the core issue here:  the email records Yahoo produced to the U.K. Prosecutors in connection with Petitioner's criminal case were *not* the product of government or any other kind of surveillance. The evidence was created using Yahoo's snapshot tool and no other mechanism. Yahoo has *always* been clear on that point. Petitioner's other quibbles with Yahoo's responses boil down to doubts about Yahoo's veracity on that core issue. At this point, it seems clear that Petitioner will never believe anything Yahoo says unless it supports Petitioner's unsupported theory of government surveillance. Nevertheless, Petitioner has demanded (1) a 30(b)(6) deposition covering all of his twenty-one interrogatories to Yahoo (in his Reply, Petitioner now asserts that he needs only a half-day deposition and combines his twenty-one interrogatories into expansive four topics) and (2) the production of broad categories of documents, including design documents, source code, documents identifying the functionality of the email system, and "all data sets that are digital and contain email usage data," ECF 13-1 at 66-67, covering many diverse aspects of Yahoo's email system without regard whatsoever to the protection of Yahoo's confidential trade secret information. Though he demanded expansive discovery, Petitioner could only point to one specific issue that did not "make sense" – the intervals of time between certain emails in the snapshots Yahoo produced to U.K.

---

[1] Petitioner has requested: (1) E-mail system and Retention System documents including design documents, command language guides or references, architecture diagrams, user guides, administrator guides and system compiler; (2) Instruction manuals for the peripheral equipment that was attachable or used to retrieve the e-mail data and web log data used in this case; (3) Instruction manuals for the workstation's that were attachable to the e-mail system and retention system; (4) Documents (whether design or technical in nature) identifying the functions and functionality of the e-mail system and retention system, of the "Web Bugs" or Web Log tracking and storage System, and of the clickstream analytics associated with e-mail data, web analytics and all data sets that are digital and contain e-mail usage data; (4) Source code documentation that identifies the software functionality of the e-mail system and retention system; and (5) A copy of the appropriate e-mail retention version software and software source code.

prosecutors. In keeping with Yahoo's pattern to date, Yahoo provided an explanation regarding the seemingly variable intervals of time. *See* Yahoo's Response to Motion to Compel at 13-14. Rather than address Yahoo's explanation, Petitioner objected to the declarant who provided it. Similarly, in his Reply Petitioner raises for the first time that his experts need documents to determine "whether the system architecture of Yahoo's servers support various types of monitoring, including web logs that allow saving or recording of user actions, or page views, for immediate or later viewing, whether such logs are saved to one or multiple locations for storage and the functionality of such systems." Reply in Support of Motion to Compel at 6. In other words, Petitioner's theory of surveillance now contemplates that *Yahoo* is the one doing the surveillance. However, like his government surveillance theory, Petitioner provides no basis for it or any reason to believe this theory is relevant to his U.K. appeal. This demonstrates that Petitioner is not interested in actual explanations of Yahoo's processes unless they support his untenable theory of illegal surveillance. Accordingly, Petitioner is not entitled to any additional discovery at all.

## IV. YAHOO'S COMPROMISE POSITION

During counsel's conference to discuss the parties' disagreements and attempt a resolution thereof. Yahoo's counsel reiterated that a 30(b)(6) deposition would be inefficient because of the expansive nature of the topics and the fact that knowledge on those topics is diffused throughout Yahoo's personnel. Yahoo also stated that the documents requested by Petitioner included extremely sensitive trade secrets and that the international nature of this litigation would render any protective order essentially useless. Petitioner's counsel expressed concern that the process of composing and responding to interrogatories was too time-consuming given the upcoming deadlines in Petitioner's U.K. appeal. Yahoo's counsel proposed that Petitioner propound additional interrogatories on Yahoo aimed at the specific questions he has regarding the issues he raised in his briefs. Yahoo would then respond to those interrogatories in two weeks. Petitioner would then be able to propound follow-up interrogatories two weeks after that and Yahoo would respond to the follow-up interrogatories two weeks later. Petitioner's counsel agreed to present this proposal to his client, but later rejected Yahoo's proposed compromise.

Though Yahoo believes that Petitioner is not entitled to any further discovery from Yahoo, much less the expansive discovery he now seeks, Yahoo proposes the following compromise. Per Yahoo's proposal to Petitioner, Yahoo will agree to answer, two weeks after they are propounded, an additional ten interrogatories from Petitioner aimed at the supposed "inconsistencies" in Yahoo's prior statements and other specific inquiries Petitioner may have about Yahoo's auto-save feature, its snapshot tool, and its email deletion process. Petitioner then would have two weeks to formulate and propound follow-up interrogatories and Yahoo would answer those follow-up interrogatories in two weeks. Yahoo believes this is a fair compromise because it will give Petitioner additional information to evaluate his unfounded theory that the email evidence used against him was the product of government surveillance. Furthermore, Yahoo is a large corporation and expertise on the various topics proposed by Petitioner is spread among numerous engineers and specialists. Moreover, the evidence at issue was created six years ago and the technology and processes Yahoo employs has changed since that time. Thus, many of the employees who would have had knowledge of those events and systems are no longer with Yahoo and it often takes extensive effort to track down full answers to Petitioner's questions. Therefore, interrogatories are better suited to providing Petitioner definitive answers because they allow Yahoo to research accurate answers to Petitioner's inquiries rather than require a single person to answer questions on Petitioner's broad and varied topics. In short, interrogatories will lead to accurate answers most efficiently. Throughout this process, when Petitioner has been required to narrow down his broad requests into specific and narrowly-tailored questions,

Yahoo has answered those questions fully. This Court should allow the parties to craft and answer ten particular, specific interrogatories rather than impose burdensome and intrusive discovery on Yahoo, a non-party to the underlying action.

## V.     KNAGGS' RESPONSE TO YAHOO'S POSITION

Petitioner is unable to accept Yahoo's proposal for the following five reasons:

*First*, as noted above, depositions are "incomparably preferable to written interrogatories as a vehicle for seeking out useful evidence." Hendricks, supra, 114 F.3d at 394.

*Second*, given the parties' experience with interrogatories, Petitioner has serious doubts that additional interrogatories will be as useful as a single three-to-four hour deposition, wherein Petitioner can ask many more questions and variations of questions to attempt to find answers—all in a single day, as opposed to the multiple weeks proposed by Respondent.

*Third*, Yahoo's proposal to provide only selective documents, at its sole discretion, seems doomed to leave unaddressed and even *create* questions of completeness and self-serving selection. As explained above, Petitioner needs a complete production to best assure finding the desired answers.

*Fourth*, the unsourced, second hand evidence that Yahoo proposes to provide would raise special challenges for Petitioner's ability to introduce it in the UK Proceeding. For example, special applications have to be made to allow hearsay evidence to be admitted in the UK in criminal proceedings, and therefore accepting such evidence would create unnecessary uncertainty.

*Fifth*, the time consumption required by Yahoo's proposal also would put Petitioner at a severe disadvantage in the UK proceeding. Yahoo's proposal contemplates a minimum of six weeks for two rounds of interrogatories, which process would take the parties through late August. Any material Petitioner intends to rely upon be served in the UK Proceeding by September, and if (as Petitioner fears) the information provided is not complete, Petitioner would be left with no recourse.

Dated: July 7, 2016

EAGAN AVENATTI, LLP                                    ZWILLGEN LAW LLP

By:   /s/ Carlos X. Colorado                           By:   /s/    Nury A. Siekkinen
      CARLOS X. COLORADO (SBN 231031)                        NURY A. SIEKKINEN (*pro hac vice*)
      Attorneys for Petitioner                              Attorneys for Respondent
      RUSSELL KNAGGS                                        YAHOO!, Inc.

**L.R. 5-1(i) Statement**

I, Nury Siekkinen, attest that all signatories listed herein, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

By:   /s/    Nury Siekkinen
       Nury Siekkinen

**JOINT MEET AND CONFER STATEMENT**