UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL KNAGGS,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>YAHOO! INC.,<br><br>　　　　　Respondent. | Case No. 15-mc-80281-MEJ<br><br>**ORDER RE: APPLICATION AND MOTION PURSUANT TO 28 U.S.C. § 1782 FOR DISCOVERY FOR USE IN A FOREIGN PROCEEDING**<br><br>Re: Dkt. Nos. 1, 13 |

## INTRODUCTION

Before the Court is Petitioner Russell Knaggs's ("Petitioner") Motion under 28 U.S.C. § 1782 for an order directing Respondent Yahoo! Inc. ("Yahoo") to submit to a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) and to produce documents for use in a foreign proceeding. Mot., Dkt. No. 13; *see also* Initial 28 U.S.C. § 1782 Appl. ("Appl."), Dkt. No. 1. Having considered the parties' papers, the record in this matter, and the relevant legal authority, the Court now issues the following Order.

## BACKGROUND

Petitioner is a British national who is currently serving a 20 year prison sentence in England for conspiracy to import drugs into the United Kingdom ("UK"). Appl. at 2-3; Mot. at 4. At trial on the conspiracy charge, the Crown (i.e., the Prosecution) presented evidence obtained from Yahoo, which is based in Sunnyvale, California. Appl. at 2; Mot. at 4. This evidence allegedly showed Petitioner and his alleged co-conspirators communicating about and organizing their conspiracy through a single Yahoo email account by viewing and editing drafts of emails in the email account (as opposed to sending emails/messages to each other). *Id.* (both). Petitioner also alleges the evidence included emails that had been deleted from the email account. Mot. at 4.

Petitioner is in the process of appealing his criminal conviction, and one of the grounds for his appeal is his belief that the Yahoo-based evidence used against him was gathered by Yahoo through a method that violated or circumvented British law. *Id.*; Appl. at 1-2, 4, 16. Specifically, Petitioner contends the information provided to the Crown by Yahoo may have been the result of real-time monitoring and/or bulk data gathering by Yahoo. Mot. at 4. The UK Court has approved Petitioner's bid to pursue an appeal based on questions regarding the Yahoo-originated evidence. Appl. at 1-2; Mot. at 4. Petitioner now argues he needs "limited fact discovery to establish or disprove this basis for evidentiary suppression" by gaining information about the method Yahoo used to gather data to provide to law enforcement. Mot. at 4-5.

The evidence Petitioner alleges Yahoo collected unlawfully includes four "snapshots" of content from the email account used in the alleged conspiracy and email headers for emails "maintained in the account." Appl. at 2; May 22, 2014 Statement of Michele Lai[1] ("2014 Lai Stmt.") ¶¶ 4-6, Dkt. No. 1-1 at ECF pgs. 5-8. According to Yahoo, "snapshots" are "file[s] created by [Yahoo's] proprietary tool used to capture a copy of all the contents of a user's Yahoo Mail account at a given moment in time." Opp'n at 3 (quotation omitted). Yahoo explains that when one of its email users composes an email, a draft is "autosaved" (automatically saved by the email system without the user actively saving a copy of the email) on the Yahoo email server, under an email "Folder" titled "drafts." *Id.* As the user updates or changes the draft email, the new version of the draft email is auto-saved on the email server at "periodic intervals." *Id.* However, previous versions of the draft, while no longer appearing in the "drafts" folder, still remain on the email server (though invisible to the user) for an unknown period of time. *Id.* This happens because there is a multistep process that must be completed before the previous drafts are permanently deleted from the email server system—and the user updating, changing, or even deleting the draft is only the first step in the deletion process. *Id.* at 3-4. Even if the user deletes his or her draft email, the previous versions of the draft are not automatically removed from the email system; the user cannot see previous versions of the draft in their email account, but the

---

[1] Michele Lai, now Michele Chan, is the Custodian of Records and the Operations Manager of the U.S. Law Enforcement Response Team for Yahoo. Lai Stmt. ¶ 1.

previous versions remain in the email system and on Yahoo's servers until the entire removal process is complete. *Id.* And until the entire removal process is complete, the draft can still be captured in the account snapshots created by Yahoo. *Id.* at 4. A majority of the messages included in the snapshots provided by Yahoo, and used by the Prosecution at Petitioner's trial, included messages that had, at some point, been in the draft folder of the account used by Petitioner and his alleged co-conspirators. *Id.*

After informal attempts to gather information about the data-gathering process from Yahoo, on November 16, 2015, Petitioner filed his Application pursuant to 28 U.S.C. § 1782, asking this Court compel discovery from Yahoo. Appl. at 1-4. Yahoo had earlier provided Petitioner with a "custodian of records declaration," which Petitioner contends "did not respond to or address the most critical issues identified in [his] request." *Id.* at 3. Before filing his Application, Petitioner requested that Yahoo voluntarily agree to depositions, but Yahoo refused, offering instead to provide an additional declaration. *Id.* at 4. Petitioner originally sought to depose three knowledgeable individuals at Yahoo: Yahoo's Global Compliance Director, its Direct of Engineering, and its Back-End Mail Principal Engineer. *Id.* at 13; Mot. at 6. However, after filing his Application, Petitioner and Yahoo met and conferred, and Yahoo proposed providing the information sought via written interrogatories. Mot. at 6. Through a series of stipulations, the parties agreed to conduct discovery through interrogatories as well as various timing extensions. *See* Dkt. Nos. 5, 7, 9, 11.

On May 25, 2016, Petitioner filed his Motion to Compel, asking the Court to order Yahoo to produce one employee of the company's choosing (also labeled Yahoo's "person most qualified") for a half-day deposition focused on the subjects of the previous interrogatories, i.e. Yahoo data-gathering methods that are relevant to Petitioner's case. Mot. at 1. Petitioner also requests an Order requiring Yahoo to produce documents responsive to Interrogatory Request No. 14 and information listed in Petitioner's "expert 'Wish List'" concerning Yahoo's data-gathering methods. Appl. at 5; Mot. at 1. He contends that a deposition is now "called for" because (1) Yahoo has offered "evolving explanations" over time about how it retains deleted information in user email accounts; (2) "in its recent written responses, Yahoo has insulated the sources of its

information from scrutiny by the way it has fashioned its responses; and (3) Yahoo's explanations are not clear and need to be clarified." Mot. at 3.

Although Petitioner did not provide the Court with all the declarations, statements, and interrogatories obtained from Yahoo, he did include the May 22, 2014 and July 1, 2015 written statements of Michele Chan (formerly Lai), and the October 27, 2011 statement of Deputy Compliance Manager Emily Nick (Nick Stmt., Dkt. No. 1-1 at ECF pgs. 15-17). Petitioner contends these statements provide different and conflicting descriptions of the email deletion and removal process and the preservation and data-gathering process used to make the snapshots. Mot. at 5. Chan, for example, in her July 1, 2015 Statement, changed her explanation of how the data-collection works after having reviewed "company documentation" about the Yahoo email deletion process and the proprietary tools that assist in preservation and data-gathering for snapshots. Specifically, according to her May 22, 2014 statement:

> [Y]ahoo only has access to those communications retained by the subscriber, including those communications that are present in a subscriber's email 'draft' and' trash' folders. If a user deletes a communication from his or her account, the communication becomes inaccessible to the proprietary tools Yahoo uses to gather communications data in response to preservation requests and search warrants. . . . [C]ommunications that a user has not retained in his or her Mail account are not accessible to the proprietary tool that Yahoo Custodians of Record use to gather communications data in response to preservation requests and search warrants. Accordingly, a snapshot will never contain a communication that was not present in a user's account at the time the snapshot was taken. . . . [Therefore, Yahoo] could not have and did not produce any communications from [Petitioner's] account . . . that had been completely deleted from the account by the user.

2014 Lai Stmt. ¶¶ 4-5, 9. She also states Yahoo "does backup communications . . . [which] are only accessible for the purpose of recovering user account content, at the request of a user, and are not accessible to the proprietary tools Yahoo uses to gather communications data in response to legal process." *Id.* at 6 n.1. However, Chan's July 1, 2015 statement explains:

> [T]he deletion of an email is a multi-step process, and the removal of an email from what is visible to a user (i.e. 'the mailbox view') is a beginning step. Removal of the message from the 'mail server' where the user's mailbox data resides requires additional steps. The

4

> full details of the deletion process and timelines are beyond my knowledge, but the fact that an email can be deleted by a user and still remain on the mail server and associated with a user's account for some period of time resolves the apparent discrepancy in this matter. That is, Yahoo's proprietary tool was used to retrieve all the data for [Petitioner's e-mail account] that was present on a mail server, even though all of that data was not visible to the user because some had previously been deleted.

July 1, 2015 Statement of Michele Lai ("2015 Lai Stmt.") ¶ 5, Dkt. No. 1-1 at ECF pgs. 9-12.

      Yahoo alleges the differences in Michele Lai's statements were the result of her clarifying her initial statement in her later statement. Opp'n at 11-12. Yahoo asserts that, "while accurate as a general matter, [Lai's 2014 Statement and Nick's Statement] did not expressly describe the preservation of auto-save drafts of emails that have been deleted from the user's mailbox view, but still remained on the Yahoo mail servers for a period of time," as such emails "would be [and were] captured in a snapshot." Yahoo's Resps. to Interrogs., Dkt. No. 13-1 at ECF pg. 31. Yahoo says its auto-save process is "automatic," and the email "purging process" "is initiated only when it is determined through Yahoo's automated proprietary processes that enough activity has occurred within the email account to reach the threshold for action." *Id.* at ECF pgs. 52-53.

      Petitioner's computer hardware and software expert, Mark Abramson, who indicates he has expertise in computer and data forensics, cybercrime analysis, cyber terrorism prevention, and Internet intrusion detection, takes issue with Yahoo's version of events. May 25, 2016 Declaration of Mark Abramson ("May 25 Abramson Decl."), Dkt. No. 13-1 at ECF pgs. 65-67); June 30, 2016 Declaration of Mark Abramson ("June 30 Abramson Decl."), Dkt. No. 24-1 at ECF pg. 4; Abramson Expert Report ("Abramson Rpt."), Dkt. No. 24-1 at ECF pgs. 6-14. Abramson notes Yahoo "continuously changes its story" and the information it provides "does not make sense" and "is not a technical explanation of the associated events that led up to Yahoo providing the information to law enforcement." Abramson Rpt. at 4. With regard to Yahoo's "snapshot" and its process of "retriev[ing emails] from the servers because their auto-save function systematically preserved edits made over time," Abramson says the descriptions Yahoo gives of its auto-save feature are inconsistent, contradictory, and furthermore "do[] not align with [Abramson's] understanding of such programs." May 25 Abramson Decl. ¶¶ 4-7. Additionally,

Abramson contends Yahoo's statements "do not in fact agree with common technical principles. The timing of e-mail data saved between 2 minutes and several seconds is not consistent." Abramson Rpt. at 8. He asserts that "[a] more plausible explanation for the e-mail information provided to law enforcement is that the e-mail account of Mr. Knagg's [sic] was under surveillance and through the immediate efforts of surveillance, Yahoo was able to capture the e-mail information and provide it to law enforcement." *Id.*

Yahoo, for its part, contends it has "quickly and voluntarily" explained, in its answers to the 21 interrogatories propounded by Petitioner, "(1) how it collected the evidence and (2) why the draft emails that users had deleted remained on Yahoo's servers for some period of time until finally purged from the servers, albeit not visible to users in their mailboxes," and that Petitioner only makes his latest Motion because he is "[u]nhappy with the truth—because Yahoo's answers do not support his argument on appeal[.]" Opp'n at 1. It further contends "Petitioner's proposed document requests and deposition are a baseless fishing expedition into aspects of Yahoo's email system that have nothing to do with the ordinary means by which Yahoo collected Petitioner's information." *Id.* at 2. Among other things, Yahoo reiterates its process of capturing the snapshots was not done in real time but rather through auto-save drafts that captured copies of messages at various points while the drafts were stored on the Yahoo mail server through its proprietary snapshot tool. *Id.* at 3-4. It also rejects Petitioner's argument that it collected this information as part of a surveillance program, calling this accusation "baseless." *Id.* at 4.

Finally, Yahoo submits another declaration by Michele Chan filed in support of Yahoo's Opposition ("Chan Decl.," Dkt. No. 15-2); the declaration responds to Abramson's opinion about the irregularities in the frequency of the auto-save feature (*id.* ¶¶ 2-3). Chan explains that "based on communications with others who have reviewed relevant documentation and have personal knowledge and expertise[,]" there are "several factors [that] could result in drafts being saved more or less frequently." *Id.* ¶¶ 1-2. She states "the interval of time between auto-save draft messages" can be (1) "a function of the client being used to access a mail account, *e.g.*, web-based desktop access or IMAP/POP email client access"; (2) affected "if an account was being accessed from more than one client at a time" and "saved more frequently and thus at apparently irregular

intervals"; (3) relatedly, "if a user was manually saving drafts, drafts may have been saved more frequently and thus at apparently irregular intervals"; and (4) as "auto-save drafts are only saved while a message is being composed[,] [i]f a user stopped composing and returned to the draft at a later time, the auto-saved drafts of that message would be at least as far apart in time as the break in message composition." *Id.* ¶ 3.

Petitioner requests an Order compelling: (1) a half-day 30(b)(6) deposition covering four topics and (2) the production of documents responsive to Interrogatory Request No. 14[2] and Abramson's "wish-list," including:

- "E-mail system and Retention System documents including design documents, command language guides or references, architecture diagrams, user guides, administrator guides and system compiler";
- "A copy of the appropriate e-mail retention version software and software source code"
- "Source code documentation that identifies the software functionality of the e-mail system and retention system";
- "Instruction manuals for the peripheral equipment that was attachable or used to retrieve the e-mail data and web log data used in this case";
- "Instruction manuals for the workstation's that were attachable to the e-mail system and retention system"; and
- "Documents (whether design or technical in nature) identifying the functions and functionality of the e-mail system and retention system; of the 'Web Bugs' or Web Log tracking and storage System, and of the clickstream analytics associated with the e-mail data, web analytics and all data sets that are digital and contain e-mail usage data."

May 25 Abramson Decl. ¶ 8; Mot. at 1-2.

Yahoo argues Petitioner's requests are cumulative, overbroad, and harassing, as he asks

---

[2] Interrogatory No. 14 asks Yahoo to "Please IDENTIFY ALL DOCUMENTS YOU used, referred or consulted in preparing the responses to these Interrogatories." Dkt. No. 13-1 at ECF pg. 35.

Yahoo, a third party—not a defendant—to produce confidential and highly sensitive information, including source code and design documents for Yahoo Mail. Opp'n at 1. It further points out that the "four topics" Petitioner seeks a 30(b)(6) deposition for actually purport to cover all 21 interrogatories previously issued to Yahoo. Jt. Ltr. at 2, Dkt. No. 25. Finally, Yahoo contends "a protective order would not be sufficient to guard against disclosure given the extraterritorial nature of the underlying proceedings[,]" as "Yahoo would be hamstrung to enforce a protective order entered in this Court against Knaggs (who is incarcerated in the U.K.) and his U.K. legal team and experts, who lie beyond the reach of this Court's jurisdiction." Opp'n at 8.

The parties were also ordered to meet and confer and provide a joint statement indicating their "compromise positions" as part of the Court's ordinary discovery process. Order, Dkt. No. 23. The parties timely responded. *See* Jt. Ltr. Petitioner indicates that his proposal at the meet and confer was for him to forego a 30(b)(6) deposition and for Yahoo to produce the documents identified by Petitioner's experts and requested by Petitioner. *Id.* at 1. Yahoo rejects Petitioner's proposal, stating it "has made significant concessions in the course of the parties' negotiations" and counteroffers to answer additional interrogatories, which Petitioner declined. *Id.* at 1, 3.

**PETITIONER'S OBJECTION**

Petitioner objects to Michele Chan's declaration filed in support of Yahoo's Opposition (Dkt. No. 15-2), arguing "Ms. Chan's declaration is not based upon personal knowledge, and does not *specify* the basis for her information and belief. See Local Rule 7-5 ('Any statement made upon information or belief must specify the basis therefor')." Obj. at 3, Dkt. No. 24-2. Petitioner contends:

> Ms. Chan's declaration fails to comply with this fundamental requirement [of personal knowledge], as established by its threshold admission that it is "based on communications with others who have reviewed relevant documentation and have personal knowledge and expertise." [citation omitted] Evidently, Ms. Chan herself does not have the requisite personal knowledge. [citation omitted]. Instead, she relies on individuals who have "personal knowledge and expertise." [citation omitted] But Ms. Chan does not identify them beyond referring to them as "others." [citation omitted]. Nor does she provide sufficient indication of what the basis for the knowledge and expertise of the "others" might be. The stated basis is their review of materials. But Ms. Chan does not identify the materials beyond the conclusory statement that they constitute "relevant

8

documentation." [citation omitted].

*Id.* at 2. Petitioner asserts the Court should only acknowledge Chan's declaration "as prime evidence of the reason why it should grant Petitioner's Motion" or strike the declaration. *Id.* at 3.

Given the technical information asserted in Chan's declaration, the Court agrees Chan does not provide enough foundational information that she has the requisite personal knowledge to be able to rely on her statements. *See Harrington v. Daiso Japan*, 2011 WL 2110764, at *3 (N.D. Cal. May 26, 2011) (sustaining objection to a declaration where the declarant "neither indicates that any statement he makes in this declaration is based on his personal knowledge nor offers facts by which personal knowledge could be established"). Consequently, the Court sustains Petitioner's objection and will not rely on Chan's Declaration for the matters asserted therein.

## LEGAL STANDARD

The purpose of 28 U.S.C. § 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782(a) provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement may be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Consequently, the statute establishes a three-part test when deciding whether to grant a § 1782 application: "(1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the Petitioner is a foreign or international tribunal or an interested person." *In re Ex Parte Apple Inc. (In re Ex Apple)*, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (quotation omitted). But once it is determined that the three statutory requirements have been met, "a district court is free to grant discovery in its discretion" so long as compelling production of the information would not violate a legally applicable privilege. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004) (quotation omitted); 28 U.S.C. § 1782 ("A person may not be compelled to give his testimony or statement or to produce a document or other thing

in violation of any legally applicable privilege.").

However, "[a] district court is not required to grant the application" and "instead retains discretion to determine what discovery, if any, should be permitted." *Cryolife, Inc. v. Tenaxis Med., Inc.*, 2009 WL 88348, at *1 (N.D. Cal. Jan. 13, 2009) (citing *Intel*, 542 U.S. at 264). The United States Supreme Court prescribed four factors (known as the "*Intel* factors") for district courts to consider in exercising their discretion:

> (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government, or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery is "unduly intrusive or burdensome."

*In re Ex Apple*, 2012 WL 1570043, at *1 (quoting *Intel*, 542 U.S. at 264-65). District courts must exercise their discretion with the "twin aims" of § 1782 in mind: (1) "providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (quotation omitted).

## DISCUSSION

There is no dispute that Petitioner successfully meets the statutory requirements of 28 U.S.C. § 1782's three-part test. First, "the discovery sought is from a person residing in the district court to which the application is made," as Petitioner seeks discovery from Yahoo, a U.S. company that is principally located in Sunnyvale, California, which is within this Court's jurisdiction. Second, "the discovery is for use in a proceeding before a foreign tribunal" as Petitioner seeks to use the discovery gained from Yahoo in his appeal of his criminal conviction in the UK. Third, Petitioner is an "interested person" because of his involvement in his UK appeal. *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"). Consequently, this Court has the authority to compel discovery under § 1782.

The issue then is whether the Court should exercise its discretion to permit discovery, and if so, to what degree. Of the four *Intel* factors, the only factor Yahoo relies on to oppose

Petitioner's discovery request is the fourth factor, i.e., whether the discovery is "unduly intrusive or burdensome." Opp'n at 6 ("[A] court may deny overly broad and unduly burdensome discovery requests even though the Section 1782 application meets the other statutory requirements and discretionary factors." (citing *In re Ex Parte Appl. of Nokia Corp.*, 2013 WL 6073457, *3-4 (N.D. Cal. Nov. 8, 2013))). Yahoo argues Petitioner's deposition and document requests are unduly burdensome and should be denied because: "(1) the proposed document requests and 30(b)(6) deposition are unreasonably intrusive and overly broad; (2) the requested deposition and document requests are a fishing expedition into Yahoo's email system and compliance with government surveillance programs; and (3) Petitioner has failed to show that the discovery requests are likely to produce relevant, noncumulative information." *Id.* at 5-6.

The proper scope of discovery arising out of a § 1782 application is determined by the Federal Rules of Civil Procedure. *In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019-20 & n.3 (9th Cir. 1994) ("In addition to the clear language of the statute, the legislative history makes clear that 'if the court fails to prescribe the procedure, the appropriate provisions of the Federal Rules of Civil Procedure are to be followed, irrespective of whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature.'" (citation omitted)); *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591, at *3 & n.2 (D. Nev. Apr. 22, 2016) (applying the Federal Rules of Civil Procedure to a § 1782 application, and noting "[t]he Federal Rules of Civil Procedure have been applied even when the underlying foreign proceeding is criminal in nature." (collecting cases)); *accord Gov't of Ghana v. ProEnergy Servs.*, LLC, 677 F.3d 340, 343 (8th Cir. 2012) (holding that "[t]he manner in which discovery proceeds [under a § 1782 Application] will be determined by normal discovery rules." (citing *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) and *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011))). Following the December 1, 2015 Amendments to the Federal Rules, requests must be "proportional," "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

11

1  Fed. R. Civ. P. 26(b)(1).  "[U]nduly intrusive or burdensome requests may be rejected or
2  trimmed."  *Intel*, 542 U.S. at 246

3       The Court agrees with Yahoo that Petitioner's requests are somewhat broad; however, the Court also agrees that Yahoo's seemingly conflicting responses up to this point create a situation where Petitioner cannot be certain he understands the process of information gathering he seeks to challenge.  While Yahoo believes that Petitioner seeks information that is cumulative given its interrogatory responses, it would appear that the requested discovery would not necessarily be cumulative, but might instead provide clarity to Petitioner regarding Yahoo's data-gathering methods.  Additionally, since the documents Petitioner requests are potentially the same ones that helped Chan "clarify" her previous statement and better understand the data-gathering process, it would appear that these documents could help Petitioner gain a better understanding of the system as well, and could help to prove or disprove one of the grounds of his appeal, as is the purpose of his discovery request.  The Court also notes that Chan's responses up to this point do not provide the sort of personal knowledge or foundational information for the Court or Petitioner to be able to adequately assess her responses.  Consequently, Petitioner's request for documents and a 30(b)(6) deposition is appropriate rather than ordering further interrogatory responses.  *See La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 488 (N.D. Cal. 2012) ("While [a company] might prefer . . . interrogatories than to prepare a witness for a Rule 30(b)(6) deposition, . . . its preference does not provide the court with a basis for giving it the relief it seeks.").

     That said, Petitioner has not shown how his expert's "wish list" of documents are tailored to his needs and appear much broader than necessary.  Requests are "unduly intrusive and burdensome where they are not narrowly tailored, request confidential information[,] and appear to be a broad 'fishing expedition' for irrelevant information."  *In re Ex Parte Appl. of Qualcomm Inc.*, __ F. Supp. 3d __, 2016 WL 641700, at *9 (N.D. Cal. Feb. 18, 2016);  *see In re Appl. of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) (courts must look at whether the discovery requested is "sufficiently tailored to the litigation issues for which production is sought.").

     The crux of Petitioner's § 1782 Application is aimed at obtaining information about how

Yahoo collected and produced the evidence used at Petitioner's criminal trial and whether that collection was done through real-time monitoring and/or bulk data gathering. *See* Appl. at 1-2. Petitioner's primary problem with Yahoo's responses up until now seems to be that "Yahoo!'s explanations how its auto-save feature preserved deleted information in this case are not clear to Petitioner's experts and need to be further clarified." Mot. at 11. However, Petitioner's request for a 30(b)(6) deposition that involves all 21 interrogatory topics (albeit broadly corralled into four purported topics by Petitioner) and a document production responsive to Interrogatory No. 14 (i.e., "Please IDENTIFY ALL DOCUMENTS YOU used, referred or consulted in preparing the responses to these Interrogatories"), is overbroad. While Petitioner argues the documents called for in Interrogatory No. 13 are "unquestionably relevant," Petitioner has not sufficiently established why all 21 interrogatory subjects are relevant to his discovery needs. Consequently, having reviewed the Petitioner's interrogatories, the Court finds the following information is presently subject to discovery in this matter:

(1) Interrogatory Nos. 4 and 16, which ask Yahoo to describe in detail all preservation snapshots performed or conducted on the Target Email Account;

(2) Interrogatory No. 5, which asks Yahoo to describe in detail how any preservation snapshots it performed or conducted on the Target Email Account captured content that the account users had previously deleted;

(3) Interrogatory No. 6, which asks Yahoo to describe in detail why the email content from the preservation snapshots performed or conducted on the Target Email Account on or around May 7, 2010 appears to be made up of over 100 smaller snapshots taken at random and irregular intervals during the composition phase of the email text;

(4) Interrogatory Nos. 11 and 19, which ask Yahoo to describe in detail whether the Target Email Account was subjected to any form of live/real time or continuous monitoring or any bulk data gathering;

(5) Interrogatory No. 17, which asks Yahoo to identify all search warrants, letters of request, or court orders Yahoo received from any law enforcement bodies (including the United States Department of Justice), prosecuting authorities, and/or courts relating

1  to the Target Email Account, other than the preservation request which gave rise to the
2  September 30, 2009 snapshot and search warrant from Federal Bureau of Investigation
3  (FBI) Special Agent Luong, which gave rise to the May 7, 2010 snapshot; and
4  (6) Interrogatory No. 18, which asks Yahoo to describe in detail why the email content
5  from the preservation snapshots performed or conducted on the Target Email Account
6  on or around September 30, 2009 and May 7, 2010 did not capture the entirety of the
7  words and/or sentences and other parts of the draft emails were caught in the snapshot.

*See* Dkt. No. 13-1 at ECF pgs. 24-44.  Yahoo must designate one or more witnesses to sit for a Rule 30(b)(6) deposition on the foregoing topics.  It must also identify and produce any non-privileged documents Yahoo used or referred to in responding to the interrogatories identified above.  Yahoo shall comply with the ordinary discovery procedures, including, if necessary: filing a privilege log and seeking a protective order for the disclosed data.

Finally, while Yahoo contends "a protective order would not be sufficient to guard against disclosure given the extraterritorial nature of the underlying proceedings[,]"this argument is insufficient to prevent the disclosure of the discovery sought.  Moreover, it is an issue easily remedied.  In similar circumstances, courts have directed the parties to "jointly seek a protective order in" both the United States and the country in which the main suit arose.  *Siemens AG v. W. Digital Corp.*, 2013 WL 5947973, at *6 (C.D. Cal. Nov. 4, 2013); *see also In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (suggesting various ways confidentiality could be maintained, such as if the parties agreed not to exchange discovery unless/until obtaining a ruling in the foreign court that the information would be kept confidential and making the contract enforceable in the United States).  Accordingly, Yahoo shall assess the information to be produced and shall then meet and confer with Petitioner concerning the nature and purported confidentiality of those documents.  The parties shall then assess in what form and with what protections those documents should be produced (e.g., attorney's eyes only, etc.).  If necessary, Yahoo may seek a protective order or related protections from this Court; however, that is not an invitation to delay production or the deposition.

//

**CONCLUSION**

Based on the analysis above, the Court **GRANTS** Petitioner's Motion pursuant to 28 U.S.C. § 1782 for discovery for use in a foreign proceeding.

Consequently the Court **ORDERS** as follows:

A. By August 31, 2016, Yahoo shall (1) produce a witness to sit for a Rule 30(b)(6) deposition concerning the interrogatory topics listed above and (2) produce any non-privileged documents Yahoo used or referred to in responding to the interrogatories topics identified above.

B. In complying with the foregoing, the parties shall meet and confer to determine in what form and with what protections the documents shall be produced.

C. By September 9, 2016, the parties shall file a status report with the Court as to their compliance with the foregoing Order.

**IT IS SO ORDERED.**

Dated: July 20, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge